**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William FANNING et al., Defendants-**
**Appellants.**

**No. 72–1896.**

United States Court of Appeals,
Fifth Circuit.

April 11, 1973.

Rehearing and Rehearing En Banc
Denied May 29, 1973.

---

Klyde Robinson, Charleston Heights, S. C., for Fanning.

Donald I. Bierman, Miami, Fla., for Marmorstein.

Edward R. Shohat, Miami, Fla., for Dixon.

Warren E. Magee, Washington, D. C., Theodore Klein, Miami, Fla., for Von Zamft.

Robert W. Rust, U. S. Atty., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., Peter M. Shannon, Jr., Atty. Criminal Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before ALDRICH,* SIMPSON and CLARK, Circuit Judges.

ALDRICH, Circuit Judge:

Appellants, and others, were convicted, after a joint trial, of conspiracy to misapply funds of a national bank and of making false entries in bank records with intent to defraud. 18 U.S.C. §§ 371, 656 and 1005. Following affirmance, sub nom., Gordon v. United States, 5 Cir., 1971, 438 F.2d 858, cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56, they moved for dismissal of the indictment, new trial, and reduction of sentence. These motions being denied after an evidentiary hearing, they appeal. We affirm.

Appellants Von Zamft and Fanning complain that the government's use of electronic surveillance illegally interfered with their attorney-client relationship. One of the government witnesses at the trial was David Phillips. Phillips, a lawyer, was chairman and counsel of the bank and in these capacities participated in some of the overt acts enumerated in the indictment. In affidavits submitted at the hearing these appellants stated that Phillips had on occasion acted as their personal counsel, representing them with respect to business transactions. They further stated that during part of the period covered by the indictment he counseled them concerning the government's investigation of the bank. This, concededly, ended prior to the indictment. Phillips did not represent any defendant at any stage of the criminal proceedings.

It appears that during the investigation, which commenced while the conspiracy was still ongoing, government agent Brody approached Phillips for information concerning it, and Phillips concluded to cooperate. At one interview he told the agent that he planned to tape-record conversations in his office in order to prevent persons involved in the conspiracy from changing "their stories in an effort to implicate him further in the case." Brody replied that he would not participate in the recording operation. Phillips subsequently gave him several statements, but Brody testified at the hearing that he never listened to any recordings, never took possession of any, and in fact did not know whether the information received from Phillips stemmed from any conversation that had been taped. At the trial Phillips gave only the most limited testimony, the court apparently making it clear that it would not receive anything touching an attorney-client relationship.

On this basis there is nothing to the claim of illegal electronic governmental surveillance. In the light of the testimony of the agent, the court's findings that the government "neither participated nor encouraged this and . . . did not in any way utilize any information, if any, so obtained," are amply warranted. Appellants, perhaps understandably, but quite uncommendably, ignore this. Moreover, even if the government had participated, the consent of one party to the conversations—

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

here Phillips—eliminates any claim of illegality relating to the recording per se. *See* United States v. White, 1971, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453; United States v. Avila, 5 Cir., 1971, 443 F.2d 792, cert. denied, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258; United States v. Castillo, 5 Cir., 1971, 449 F.2d 1300.

■ The fact that one of Phillips' roles was personal attorney to appellants would raise a problem if they could show he divulged privileged communications that contributed to their convictions. Passing the serious question that the communications in all likelihood involved plans to carry out illegal activities, and hence were outside the privilege, Clark v. United States, 1933, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993, appellants failed to show that information given the government by Phillips stemmed from attorney-client communications at all. *Cf.* United States v. Bartlett, 8 Cir., 1971, 449 F.2d 700, 703–704, cert. denied, 405 U.S. 932, 92 S.Ct. 990, 30 L.Ed.2d 808. It is not enough to show, on the one hand, interchange between Phillips and appellants and, on the other hand, interchange between Phillips and the agent; appellants were obliged to link the two together and, further, to show prejudice therefrom. Alderman v. United States, 1969, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176.

■ Correspondingly, there is no merit in appellants' claim that they were denied effective assistance of counsel. As we stated in United States v. Zarzour, 5 Cir., 1970, 432 F.2d 1, at 3:

"[A]n intrusion by the government upon the confidential relationship between a criminal defendant and his attorney, either through surreptitious electronic means or through an informant, is a violation of the Sixth Amendment right to counsel. . . . However, there must be an intrusion."

Even more fundamental, having been informed by Phillips prior to the indictment that he was no longer representing them, appellants were not even under the impression that he was representing them at any critical stage. Kirby v. Illinois, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

In this posture these appellants repetitively seek to counter by claiming that at no time have they ever seen Phillips' statements. The claim is totally unwarranted. While the court (understandably, we think) [1] made no finding on this point, our reading of the record persuades us that the Phillips statements called for under the Jencks Act, 18 U.S. C. § 3500, were distributed, and that appellants had ample opportunity to make the showing necessary to support their contention. Agent Brody testified at the hearing that he saw government counsel deliver Phillips' statements to defense counsel at the trial. Moreover, the record at the trial reveals that government counsel requested and received an afternoon recess to prepare the statements for distribution and that no objections were made the following morning that would suggest he had not completed his obligations. Appellants make much of the demand, but no mention of the speaking silence thereafter.

■ We note, further, that when the jury retired for deliberation of appellants' verdicts and Phillips was recalled for further testimony by another defendant who was trying his case to the judge alone, the attorney for that defendant made reference to Phillips' statements, and indeed, asked a question concerning the "bugging" activities. And, finally, we note that at the hearing it appeared that at least some of the statements were present in the court-

---

1. At the hearing, instead of the sweeping claim of never seeing any of Phillips' statements, appellants claimed that at trial they did not see the statement relating to Phillips' decision to tape-record conversations in his office. The extent of their proof was that, although remembering receipt of many Jencks Act statements throughout the trial, attorneys for appellants had no "recollection" of receiving the particular statement referring to the recording operation.

room and that all of them, according to Agent Brody, were on the rostrum of the United States Attorney's office, and available to the court, The claim that the statements were never available is wholly unsupported by the record.

Appellant Dixon charges that the district court erred in not releasing the grand jury testimony of codefendant Von Zamft made during an investigation of a theft of securities in the Southern District of New York, see post.[2] It appears that at the hearing a defendant who has not appealed requested the judge to inspect in camera the New York testimony to see if it was relevant; the judge did so, and found nothing of potential value. In view of the fact that no defendant—Von Zamft himself has made no objection regarding the discovery of his testimony—ever requested the court to turn the material over without inspecting it in camera, appellant Dixon's charge that he had a right to see the testimony without prior screening is too late. More basic, the government is correct in stating that it would be impracticable and unproductive to require delivery of all statements made at any time in any jurisdiction by a defendant. Where, as here, the testimony relates to an extraneous investigation, and no showing of a "particularized need" is made, *cf.* Menendez v. United States, 5 Cir., 1968, 393 F.2d 312, cert. denied, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 572, an in camera inspection is the most a defendant is entitled to.

The motions for reduction of sentences are also without merit, assuming an appeal lies. Von Zamft, in an affidavit, states that he was promised by prosecutors in New York that he would not have to serve any time if he cooperated in their prosecution of the securities theft case. Von Zamft did in fact cooperate in the case, which took place after his conviction and sentencing in Florida, and the New York prosecutors communicated the details of the cooperation to the judge below. The letter does not disclose, however, and the government denies, that any promise was made respecting the Florida sentence. Indeed, it is at least questionable that any binding promise could have been made by government officials in one jurisdiction with respect to a sentence already pronounced in another jurisdiction.[3] We may add that even had a promise been proved, appellant's claim is a far cry from Santobello v. New York, 1971, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, where the prosecutor reneged on a promise to recommend sentence after securing petitioner's return promise to plead guilty. No such reliance is involved here.

Affirmed.

---

2. At trial the government was ordered to turn over all grand jury statements of defendants with respect to the investigation of the bank fraud conspiracy, and it did so.

3. It may be that any New York "deal" related to Von Zamft's New York conviction in connection with the securities theft. In that case the court sentenced Von Zamft to a term concurrent with his Florida sentence, and subject to any modification of that sentence.