Robin Roy WOOD and Kimberley Kay
Wood, Individually and as Next Friend
of Carena Valeria Wood, a Minor, Rela-
tors,

v.

Honorable F. Scott McCOWN,
Judge, Respondent.

No. 3–89–189–CV.

Court of Appeals of Texas,
Austin.

Jan. 24, 1990.

Bob Gibbins and Steve Gibbins, Gibbins & Winckler, Austin, for relators.

David E. Chamberlain, Lea & Chamberlain, Austin, for real party in interest.

Before POWERS, CARROLL and ABOUSSIE, JJ.

CARROLL, Justice.

Relators complain of Honorable F. Scott McCown, judge of the district court of Travis County, in cause number 458,432 which is pending in Travis County district court. By writ of mandamus, relators seek to overturn Judge McCown's July 24, 1989, order that sustained Javier Arriola's objection to relators' request for production number 17. Because the documents sought by relators are protected by the attorney-client privilege and the work product doctrine, respectively, we will deny relators' petition for writ of mandamus.

## BACKGROUND

Relators, asserting that Javier Arriola assaulted Carena Wood while Carena and her mother were shopping at Arriola's place of employment, filed the civil lawsuit that underlies this original proceeding. Before the filing of relators' civil lawsuit, Javier Arriola was convicted in a criminal proceeding that arose from the same incident at issue in the civil case. Relators requested production of Arriola's criminal defense file which is held by Fernando Martinez, the attorney who defended Arriola during his criminal prosecution. Arriola

filed an objection to relators' request based upon the attorney-client privilege and the work product doctrine. Agreeing with Arriola, Judge McCown sustained the objection.

In a sworn affidavit, attorney Fernando Martinez characterized the documents at issue as follows:

> Pages 1–8 are my notes that I made during the trial ... and made in the presence and discussed with my client during trial. I consider these notes to be both my work product and attorney/client communications. Page 9 is my notes made during a confidential interview with my client.... Page 10 is my personal notes made during an interview with one of the witnesses who testified at the trial.... Pages 11–13 are copies of information I provided to my client, and I consider these to be confidential communications between my client and me. Pages 14–16 are my personal notes made in preparation of the trial in researching the legal issues involved.

We have examined the sealed documents, and Mr. Martinez's characterizations appear to be accurate.

■ Before we may grant the extraordinary remedy of mandamus, relators must show compelling circumstances which establish the necessity for the writ and must demonstrate that the district judge clearly abused his discretion. Tex.R.App.P.Ann. 121(a)(2)(D) (1989); *See Zenith Radio Corp. v. Clark*, 665 S.W.2d 804, 806 (Tex. App.1983, orig. proceeding). A district court abuses its discretion "when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

Because the Arriola criminal file was created in the context of his criminal proceeding, and because Mr. Martinez prepared and still possesses the file on Arriola's behalf, we must analyze this matter with the criminal rules and privileges in mind.[1]

---

1. We appreciate the irony stemming from the possibility that the highest civil appellate court in the state ultimately may decide the issues before us rather than the highest criminal court.

First, we will determine whether each group of documents was covered either by the attorney-client privilege or the work product doctrine. If the materials were privileged in the criminal proceeding, we then will determine whether the protection endures beyond the completion of Arriola's criminal case.

## ATTORNEY–CLIENT PRIVILEGE

■ The Texas Rules of Criminal Evidence state in part:

> A client has a privilege to refuse to disclose and *to prevent any other person from disclosing confidential communications* made for the purpose of facilitating the rendition of professional legal services to the client and made: (1) between him or his representative and his lawyer.... A client has a privilege to prevent the lawyer or the lawyer's representative from disclosing *any other fact which came to the knowledge of the lawyer ... by reason of the attorney-client relationship.*

Tex.R.Cr.Evid.Ann. 503(b) (1989) (emphasis ours). From a plain reading of the rule, we conclude that the following documents were initially protected by the attorney-client privilege: Pages 1–8, Martinez's trial notes (the notes were created in Arriola's presence and were discussed with him); page 9, notes made during a confidential interview between Arriola and Martinez; page 10, witness interview notes (the facts contained therein came to the knowledge of Martinez by reason of the attorney-client relationship); and pages 11–13, copies of information Martinez provided to Arriola. *Id.*

■ The attorney-client privilege facilitates attorney-client communications that are unrestrained by any apprehension that such confidences will later be revealed, and therefore, the privilege is permanent unless waived.[2] *Cruz v. State,* 586 S.W.2d 861, 865 (Tex.Cr.App.1979); *Bearden v. Boone,* 693 S.W.2d 25, 28 (Tex.App.1985, orig. proceeding). Because the attorney-client privilege attached to pages 1–13 and no waiver of the privilege is apparent in the record here, Judge McCown did not commit a prejudicial error of law when he sustained Arriola's objection to relators' request for production with regard to pages 1–13. *Johnson,* 700 S.W.2d at 917.

## WORK PRODUCT DOCTRINE

■ The work product doctrine generally shelters from discovery materials such as memoranda, reports, interviews, mental impressions, conclusions, opinions, legal theories and other materials prepared and assembled for litigation and in anticipation of litigation. *Wiley v. Williams,* 769 S.W.2d 715, 717 (Tex.App.1989, orig. proceeding). The United States Supreme Court initially applied the work product doctrine to criminal cases in *United States v. Nobles,* 422 U.S. 225, 236, 95 S.Ct. 2160, 2169, 45 L.Ed.2d 141 (1975).[3] From our inspection of the documents sought, we conclude that the following materials were initially covered by the criminal work product doctrine: Pages 1–8, Martinez's trial notes; page 10, witness interview notes; and pages 14–16, Martinez's personal notes which reflect legal research for Arriola's defense. *See Ott v. State;* 627 S.W.2d 218, 225 (Tex.App.1981, pet. ref'd).

■ The crucial issue here is whether the work product protection endures beyond Arriola's concluded criminal case. Texas courts have stated or suggested that the work product exemption from discovery terminates at the end of a civil case when attorney work product from that prior civil case is sought in a subsequent civil case. *Dewitt & Rearick, Inc. v. Ferguson,* 699 S.W.2d 692 (Tex.App.1985, no writ); *Bear-*

**2.** An amicus curiae aptly points out that by acknowledging the attorney-client privilege, society prefers to foster communication by creating a private zone in which clients and lawyers are permitted to talk outside the scrutiny of others rather than risk impairment of the attorney-client relationship.

**3.** In Texas, the criminal work product doctrine is recognized through the common law. *See, e.g., Ott v. State,* 627 S.W.2d 218, 225 (Tex.App. 1981, pet. ref'd). Also, the Texas Rules of Civil Procedure provide a work product exemption from civil discovery. Tex.R.Civ.P.Ann. 166b(3)(a) (Supp.1989).

*den,* 693 S.W.2d 25; *See also Allen v. Humphrey,* 559 S.W.2d 798 (Tex.1977). The real parties in interest here, however, have not cited a case from *any* jurisdiction that stands for the proposition that the work product exemption terminates at the end of a criminal case when attorney work product from that concluded criminal case is sought in a subsequent civil case.

The implications of termination of the work product exemption at the conclusion of a criminal case are distinguishable from the implications of the termination of the exemption at the end of a civil case. While discussing the relative significance of the work product doctrine in the criminal versus the civil context, the United States Supreme Court, speaking through Justice Powell, stated:

> Although the work product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system *is even more vital.* The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

*Nobles,* 422 U.S. at 238, 95 S.Ct. at 2170 (emphasis ours). In both the criminal and civil contexts, the potential chilling effect upon an attorney's willingness to record and retain his mental impressions, factual investigations, or legal research is considerable when a lawyer knows that his work product will be subject to discovery after the conclusion of his client's case. With our constitutional form of government in mind, we are more concerned, however, with the qualitative threat to the judicial process when a person faces potential criminal sanction versus potential civil liability.

The reasons justifying the criminal work product doctrine also dictate that the completion of the criminal case should not necessarily abort the work product exemption, and therefore, we are unwilling to carve out an exception to the current criminal work product doctrine in the absence of precedent. *See Nobles,* 422 U.S. at 237, 95

S.Ct. at 2169. Accordingly, we hold that Judge McCown did not commit a prejudicial error of law when he sustained Arriola's objection to relators' request for production with respect to pages 1–8, 10, and 14–16, as the work product exemption applies to those pages, and no waiver of the exemption is apparent in the record here. *Johnson,* 700 S.W.2d at 917.

Because we conclude relators have failed to demonstrate compelling circumstances which would necessitate the issuance of a writ and because Judge McCown did not abuse his discretion, we deny relators' petition for writ of mandamus. Tex.R.App.P. Ann. 121(a)(2)(D) (1989); *See Zenith Radio,* 665 S.W.2d at 806.